**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| **MATTHEW WILLIAMS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Criminal Action No.** |
| | : | **7:06-CV-111(HL)** |
| **PACKAGING CORPORATION OF** | : | |
| **AMERICA; and UNITED STEEL,** | : | |
| **PAPER AND FORESTRY, RUBBER** | : | |
| **MANUFACTURING, ENERGY,** | : | |
| **ALLIED INDUSTRIAL AND SERVICE** | : | |
| **WORKERS INTERNATIONAL** | : | |
| **UNION, USW (LOCAL 646),** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

# ORDER

Before the Court are Defendant United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers Intentional Union, Local 646's ("USW Local 646" or "Local 646") Motion for Summary Judgment (Doc. 31), Defendant Packaging Corporation of America's ("PCA") Motion for Summary Judgment (Doc. 34), and Plaintiff's Motion for Summary Judgment (Doc. 36). For the following reasons, Defendants' Motions are granted, and Plaintiff's Motion is denied.

## I.     FACTS AND PROCEDURAL HISTORY

As an initial matter, Local Rule 56 requires that a party moving for summary

judgment attach to the motion "a separate and concise statement of the material facts to which [it] contends there is no genuine issue to be tried."  Middle District of Georgia, Local Rule 56.  The nonmoving party is then required to respond to each of the movant's numbered material facts.  Id.  All material facts not controverted by the nonmoving party are deemed admitted.  Id.  "The response that the party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Rule 56(f) of the Federal Rules of Civil Procedure."  Id.

In this case, both Defendants complied with Local Rule 56 by attaching their Statements of Material Facts to their Motions.  Plaintiff, however, did not respond to each of PCA's numbered material facts.  Moreover, Plaintiff did not file a response brief to PCA's Motion for Summary Judgment.  Plaintiff did file a response brief to Local 646's Motion for Summary Judgment, but instead of responding to Local 646's Statement of Undisputed Facts, Plaintiff responded only to the numbered facts that are contained in the facts section of Local 646's Motion for Summary Judgment.[1]

As a result of Plaintiff's failure to comply with Local Rule 56, all material facts

---

[1]Plaintiff specifically admitted most of those numbered facts and stated that he could neither admit or deny the others.  But the response that a party is without sufficient knowledge to admit or deny the moving party's factual statements is not an acceptable response unless the party has complied with the provisions of Rule 56(f), and Plaintiff has not complied with those provisions. Middle District of Georgia, Local Rule 56.  Thus, Plaintiff has not actually controverted any of the factual allegations contained in Local 646's Motion for Summary Judgment.

set forth in both Defendants' Statements of Material Facts are deemed admitted. However, not every statement of material fact will be accepted by this Court. Only those statements that are supported by the record will be adopted. Furthermore, statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the Court. With this standard in mind, the facts are as follows.

Defendant PCA owns and operates a pulp and paper mill in Valdosta, Georgia. The mill, which opened in 1954, has been owned by PCA since 1999. The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union ("USW") is the collective bargaining representative of the maintenance and operation employees at the facility. Defendant Local 646 consists of those members of the bargaining unit who choose to join USW. A collective bargaining agreement ("CBA") governs the terms and conditions of employment of bargaining unit employees at the mill.

In 1970 Plaintiff Matthew Williams started working at PCA's Valdosta mill as an Extra Hand in the Woodyard. (PCA's SOMF ¶ 13). Plaintiff filled a variety of jobs over the next several years. In April 1977 Plaintiff transferred to the Brick-mason/Carpenter job classification in the Maintenance Department. (Id. at ¶ 15). On July 1, 1986, Plaintiff was promoted to the Brick-mason/Carpenter Leader. (Id. at ¶ 16).

When Plaintiff started working as a Brick-mason/Carpenter, the Maintenance Department consisted only of single-skill Brick-mason/Carpenters and multi-skill

General Mechanics. (Id. at ¶ 11). Prior to 1968 the Maintenance Department consisted of numerous single-skill job classifications, such as Machinists, Welders, Brick-mason/Carpenters, and Pipefitters, just to name a few. (Id. at ¶ 10). But in 1968 the mill's owner at the time, Owens-Illinois, merged most of the single-skill job classifications into a new multi-skill General Mechanic job classification to provide greater flexibility. (Id.; Local 646's SOMF ¶ 13). In 1997 PCA's predecessor, Tenneco, attempted to complete the merger of all single-skill job classifications into the multi-skill General Mechanic job classification when it unilaterally abolished the Brick-mason/Carpenter line of progression. (PCA's SOMF ¶¶ 11, 19). Employees in the Brick-mason/Carpenter line of progression moved into other jobs. (Local 646's SOMF ¶ 10). Plaintiff used his seniority to bump into an Oiler position, which paid significantly less than his job as a Brick-mason/Carpenter. (Id.).

Because Tenneco abolished the line during the term of a CBA, USW's predecessor filed a grievance. (Id.). Also, in November 1998 Plaintiff filed suit in this Court against Tenneco for race discrimination under Title VII and § 1981 and retaliation under § 1981. (PCA's SOMF ¶ 21). This Court granted summary judgment to Tenneco, and the Eleventh Circuit affirmed. (Id. at ¶ 24). Before Plaintiff's lawsuit was resolved, Tenneco agreed to resolve the Union's grievance by reinstating the Brick-mason/Carpenter line of progression, and Plaintiff returned to his previous position as Brick-mason/Carpenter Leader. (Id. at ¶ 25). Plaintiff was the only employee who chose to return to the line of progression when it was

4

reinstated. (Local 646's SOMF ¶ 10).

In 2002 PCA and Local 646 began to negotiate the terms of a new CBA as the CBA in effect at the time was set to expire in 2003. (Id. at ¶ 11) As part of the negotiations, PCA proposed eliminating the Brick-mason/Carpenter line of progression and the Electrical & Instrumental ("E&I") Day Operator job classification. (Id. at ¶ 11). On December 13, 2004, the new CBA was ratified. (PCA's SOMF ¶ 32). Among other things, the new CBA eliminated the Brick-mason/Carpenter line of progression and the E&I Day Operator job classification. (Id. at ¶ 33). Robert Simmons, a white employee, was the only E&I Day Operator. (Id. at ¶ 38). To protect Plaintiff and Mr. Simmons from a wage decrease that could result from transfers to lower-paying positions, their wages were "red-circled," or frozen. (Id. at ¶¶ 35, 36).

On January 2, 2005, the new CBA was implemented, and on January 4, 2005, Plaintiff was informed his job had been eliminated and he was being assigned to work as a Maintenance Assistant. (Id. at ¶¶ 46, 47). Because his wages were red-circled, Plaintiff still earned the same rate of pay as he did as a Brick-Mason/Carpenter, which was $24.00 an hour. (Id. at ¶ 43). But as a Maintenance Assistant, Plaintiff was not eligible for any annual wage increases. Plaintiff was informed that he could remain a Maintenance Assistant indefinitely, or he could take the Work Keys and welding tests to become qualified for a Class-D Mechanic position, which is the entry level General Mechanic job. (Id. at ¶¶ 48, 49). PCA,

working in conjunction with Valdosta Technical College, formulated the Work Keys test in 2000 to ensure that applicants for General Mechanic positions possess the necessary skills to do the job. (Id. at ¶¶ 26-28). Plaintiff had previously taken the Work Keys test in 2000, but he failed two of the four skills areas tested. (Id. at ¶ 54). General Mechanics are required to pass three of the four skill areas. (Id. at ¶ 55). Despite the fact that Plaintiff only needed to retake the two skill area tests he failed, Plaintiff refused to do so and demanded that he be assigned as an A-class General Mechanic without any testing requirement. (Id. at ¶ 56). PCA refused to waive the testing requirement, and Plaintiff remained as a Maintenance Assistant.

On November 2, 2006, Plaintiff filed suit against PCA in this Court alleging that PCA's refusal to place Plaintiff in a line of progression that allowed for promotions and pay increases constituted unlawful race discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Doc. 1). Plaintiff's alleged disabilities are emphysema and asbestosis. In addition, Plaintiff asserted a negligence claim against PCA based on Plaintiff's alleged exposure to asbestos fibers during his employment at the mill. On April 5, 2007, Plaintiff filed an Amended Complaint (Doc. 16) that added USW Local 646 as a Defendant. The Amended Complaint alleged that USW Local 646 breached its duty of fair

representation when it did not process a grievance on Plaintiff's behalf. The claims against PCA remained the same. On May 18, 2007, this Court issued an Order (Doc. 21) dismissing Plaintiff's state law negligence claim for lack of federal subject matter jurisdiction.

On October 22, 2007, PCA filed its Motion for Summary Judgment on Plaintiff's remaining claims, and Local 646 filed its Motion for Summary Judgment on Plaintiff's fair representation claim. On October 23, 2007, Plaintiff filed his own Motion for Summary Judgment against PCA and Local 646.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed.

7

2d 105 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B. PCA's Motion for Summary Judgment**

Defendant PCA has moved for summary judgment on Plaintiff's race discrimination and retaliation claims under Title VII and § 1981, Plaintiff's age discrimination claim under the ADEA, and Plaintiff's disability discrimination claim under the ADA.

### 1.  Title VII Claims

PCA has moved for summary judgment on Plaintiff's Title VII claims on the ground that Plaintiff failed to timely exhaust his available administrative remedies. Before filing suit under Title VII, a plaintiff must file a charge of discrimination with the EEOC within either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir. 2001).  The 300-day time period is utilized in those states that have entities with the authority to grant or seek relief with respect to unlawful employment practices and an employee files a grievance with that agency; in all other states, known as "nondeferral states," the charge must be filed within 180 days.  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002). Because Georgia is a nondeferral state, the 180-day time period applies.  <u>Watson v. Blue Circle, Inc.</u>, 324 F.3d 1252, 1258 (11th Cir.2003).  The time period commences when the plaintiff is informed of the adverse employment action.  <u>Stewart v. Booker T. Washington Ins.</u>, 232 F.3d 844, 849 (11th Cir. 2000).

In this case, the CBA that eliminated Plaintiff's Lead Carpenter position was ratified in December 2004.  On January 4, 2005, PCA informed Plaintiff his line of progression had been eliminated and that he was being transferred to the position of Maintenance Assistant.  But Plaintiff did not file his EEOC complaint until April 11, 2006, which is more than 180 days after he received notice of the adverse employment action.  As a result, PCA is entitled to summary judgment on Plaintiff's

Title VII race discrimination and retaliation claims.

## 2. § 1981 Claims

Plaintiff has also asserted disparate treatment and retaliation claims under§ 1981. Employment discrimination claims brought under Title VII and § 1981 have the same requirements of proof and use the same analytical framework. Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Unlike Title VII, however, § 1981 does not have an exhaustion of administrative remedies requirement, and therefore, Plaintiff's failure to file a timely EEOC charge is not fatal to his § 1981 claims. See Sparks v. Griffin, 460 F.2d 433, 442 (5th Cir. 1972).[2] This Court will address Plaintiff's § 1981 claims in turn.

### a. Disparate Treatment

A claimant alleging race discrimination in employment in violation of § 1981 may attempt to show unlawful discrimination through either direct or circumstantial evidence. Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999). Direct evidence of discrimination is evidence that "'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" Id. (quoting Burrell v. Bd. of Trustees of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997)) (alterations in original). Direct evidence consists only of "'the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." Id.

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit held that all decisions handed down by the old Fifth circuit before September 30, 1981, are binding precedent in the Eleventh Circuit.

(quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)).

In the absence of direct evidence, a § 1981 claimant must establish his discrimination claim by relying on the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Under this framework, the claimant must first establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) similarly situated employees outside of his protected class were treated more favorably; and (4) he was qualified to do the job. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).

In this case, Plaintiff alleges that PCA discriminated against him on the basis of race in violation of § 1981 when it refused to place him in a line of progression that would allow for promotion and pay increases.[3] (Am. Compl. ¶ 12). Plaintiff contends that he should have been placed in an A-Class Mechanic position, which is a General Mechanic position. (Pla.'s Dep. Ex. 8). Because Plaintiff has not pointed to any direct evidence of race discrimination, he must rely on the McDonnell Douglas burden shifting framework to show unlawful discrimination. PCA contends that Plaintiff cannot establish a prima facie case of race discrimination because Plaintiff

_____

[3]Plaintiff also seems to allege that PCA violated § 1981 when it discriminated against him on the basis of age. It is well established that § 1981 only prohibits discrimination on the basis of race; it does not prohibit age discrimination. See Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 459-60 (1975). As a result, Plaintiff cannot assert an age discrimination claim under § 1981.

was not qualified for the job in question and Plaintiff cannot point to any similarly situated employees that were treated more favorably.  This Court agrees.

Before becoming a General Mechanic an individual must first pass three of the four areas tested by the Work Keys skill test.  Plaintiff took the Work Keys test on October 19, 2000, but he failed two of the four areas tested.  Plaintiff never retook the test, and he refuses to do so because he "feels" that it is unfair that he has to pass a test before becoming a General Mechanic.  (Pla.'s Dep. at p. 12). Regardless of how Plaintiff "feels" about the Work Keys test, the fact remains that passage of the test is a prerequisite to becoming a General Mechanic.

Because he did not respond to PCA's Motion for Summary Judgment, Plaintiff has not addressed PCA's argument that he was unqualified for the job in question. In his response to Local 646's Motion for Summary Judgment and in his own Motion for Summary Judgment, Plaintiff argues that the Work Keys test violates § 1981 because it has a disparate impact on African-Americans.  But Plaintiff's Amended Complaint does not allege a disparate impact claim.  In fact, the Work Keys test is not mentioned anywhere in Plaintiff's Amended Complaint.  As a result, Plaintiff cannot now assert for the first time that the test violates § 1981.  See Fed. R. Civ. P. 8(a)(2).  Moreover, a Plaintiff must use statistics to show that a particular employment practice has a disparate impact, and Plaintiff has not introduced any statistical evidence.  See EEOC v. Joe's Stone Crab, 220 F.3d 1263, 1274-75 (11th Cir. 2000).  Accordingly, because Plaintiff has not passed the Work Keys test, he is

not qualified for the position he seeks, and therefore, he cannot establish a prima facie case of discrimination.

In addition, Plaintiff has not established that any similarly situated employees outside his protected class were treated more favorably. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Plaintiff attempts to use Robert Simmons, a white employee, as a comparator. The new CBA that was ratified in December 2004 eliminated Simmons's job as an E&I Day Operator, but it did not eliminate his line of progression. According to Plaintiff, Simmons was then "placed in a higher position in the same department where he has an opportunity to advance and receive pay increases," while Plaintiff was placed in a position that does not provide an opportunity for pay increases and progression. (Am. Compl. ¶ 8). Assuming this to be true, Plaintiff and Mr. Simmons are not similarly situated. Mr. Simmons's specific job was eliminated, not his entire line of progression. When Mr. Simmons's job was eliminated, he received a different job in the same line of progression as his previous job. On the other hand, Plaintiff's entire line of progression was eliminated. Thus, unlike Mr. Simmons, Plaintiff was unable to obtain a different job in the same line of progression. Plaintiff also could not bump into the General Mechanic line of progression because, as stated above, he was not qualified. In contrast, Mr. Simmons was qualified for the job he received after the

new CBA eliminated his previous job.  (Kinsey Dep. at p. 14; Willis Dep. at p. 80-81).

For these reasons, Plaintiff cannot establish a prima facie case of discrimination

because he has failed to establish that any similarly situated employees were treated

more favorably.[4]  Accordingly, PCA is entitled to summary judgment on Plaintiff's §

1981 disparate treatment claim.

### b. Retaliation

To establish a prima facie case on a retaliation claim, a claimant must prove

that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse

action; and (3) there is a causal connection between the protected activity and the

adverse action.  Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956,

959 (11th Cir. 1997).  To show causation, a claimant need only establish that "'the

protected activity and the adverse action were not wholly unrelated.'"  Farley v.

Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (quoting Clover v.

Total System Servs., 176 F.3d 1346, 1354 (11th Cir. 1999)).  A claimant can

establish causation by providing "'sufficient evidence' of knowledge of the protected

expression and 'that there was a close temporal proximity between this awareness

and the adverse...action.'"  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)

(quoting Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1180 n.3 (11th Cir. 2003)).

---

[4]In his deposition, Plaintiff contends that white employees who worked in the single-skill job classifications prior to 1968 did not have to take a test when those classifications merged into the General Mechanic job classification in 1968.  Those employees, however, are not similarly situated to Plaintiff because, among other things, the Work Keys testing requirement did not exist until 2000.

But the temporal proximity between knowledge of the protected activity and the adverse action must be "'very close.'" Id. (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." Id.

In his Amended Complaint, Plaintiff asserts that in 1998 he filed a race discrimination lawsuit against Tenneco, PCA's predecessor, and he believes that the "present actions of the defendant are retaliatory." (Am. Compl. ¶ 14). Plaintiff fails to allege which of PCA's "present actions" are retaliatory. Does he contend that the elimination of his line of progression was retaliatory? Or, as with his disparate treatment claim, is Plaintiff complaining about being assigned to work as a Maintenance Assistant, a position that does not allow for promotions and pay increases? Nevertheless, it does not matter which actions Plaintiff contends are retaliatory because Plaintiff has not pointed to anything in the record that establishes a causal connection between the complaint he filed in 1998 and the "present actions" of PCA, all of which occurred in late 2004 and early 2005. The six to seven year gap between Plaintiff's protected activity and the adverse employment actions does not allow a reasonable inference of causation based on temporal proximity because, as a matter of law, events that occurred six years apart are not "very close" in time. Because Plaintiff has not presented any other evidence of causation, PCA is entitled to summary judgment on Plaintiff's retaliation claim.

### 3. ADEA Claim

A plaintiff alleging a violation of the ADEA must file a discrimination complaint with the EEOC before filing suit. Wright v. AmSouth Bancorporation, 320 F.3d 1198, 1201 (11th Cir. 2003). The EEOC complaint must be filed "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626 (d)(1). Here, Plaintiff filed his EEOC charge on April 11, 2006. As stated above, this was more than 180 days after the alleged discriminatory employment action occurred. Accordingly, PCA is entitled to summary judgment on Plaintiff's ADEA claim.

### 4. ADA Claim

As a prerequisite to filing suit under the ADA, a claimant alleging disability discrimination must comply with the same procedural requirements that exist under Title VII. Zillyette v. Capital One Financial Corp., 179 F.3d 1337, 1339 (11th Cir. 1999); 42 U.S.C. § 12117(a). Thus, an ADA claimant is required to file a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. Maynard v. Pneumatic Products Corp., 256 F.3d 1259, 1262 (11th Cir. 2001).

Here, Plaintiff never filed a charge of disability discrimination with the EEOC. The EEOC charge that Plaintiff filed on April 11, 2006, does not allege disability discrimination. (Pla.'s Dep. Ex. 11). It only alleges discrimination based on race and age. (Id.). Moreover, if this Court construed Plaintiff's EEOC charge to include a charge of disability discrimination, PCA would still be entitled to summary judgment

on the ADA claim because the EEOC charge was untimely. As a result, PCA is entitled to summary judgment on Plaintiff's ADA claim.

### C. Local 646's Motion for Summary Judgment

Defendant Local 646 has moved for summary judgment on Plaintiff's claim that Local 646 breached its duty of fair representation. The duty of fair representation requires that a union fairly represent "the interests of all bargaining-unit members during the negotiation, administration, and enforcement of collective-bargaining agreements." Int'l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 47 (1979). To establish a claim for breach of the duty of fair representation, the claimant must show that "the union acted with reckless disregard for the employee's rights or was grossly deficient in its conduct." Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206-07 (11th Cir. 1982). Mere negligence or mistake in judgment in not sufficient to establish a claim. Parker v. Connors Steel, 855 F.2d 1510, 1519 (11th Cir. 1988). A union breaches the duty only if "the union's handling of the grievance was either arbitrary, discriminatory, or in bad faith." Harris, 668 F.2d at 1206 (internal quotations omitted). To establish that a union breached its duty of fair representation in failing to process a grievance, the employee must also establish that the grievance had merit. See Vaca v. Sipes, 386 U.S. 171, 192-93 (1967); Turner v. Air Transp. Dispatchers' Ass'n, 468 F.2d 297, 300 (5th Cir. 1972). Actions against a union for a breach of its duty of fair representation are governed by a six-month statute of limitations. The limitations period starts running "when the plaintiff

was or should have been aware of the acts constituting the alleged violation."
Proudfoot v. Seafarer's Int'l Union, 779 F.2d 1558, 1559 (11th Cir. 1986).

Just as Plaintiff has failed to clearly articulate the basis of other claims he has asserted in this case, Plaintiff does not clearly allege which of Local 646's actions breached its duty of fair representation.  The only allegation that Local 646 did not fairly represent Plaintiff appears in paragraph 9 of his Amended Complaint, in which Plaintiff alleges he attempted to file a grievance and Local 646 did not fairly represent him in "the matter."  (Am. Compl. ¶ 9).  A review of the record reveals that Plaintiff actually attempted to file two grievances:  one in December 2004 and another in October 2006.  But Plaintiff's Amended Complaint does not specify which of the two grievances serves as the basis of his fair representation claim.  Further adding to the ambiguity is that Plaintiff contends in his response brief that Local 646 breached its duty of fair representation by allowing PCA to make passage of the Work Keys test a prerequisite for a position in the General Mechanic line of progression.  As stated above, however, the Work Keys test is not mentioned anywhere in Plaintiff's Complaint, and therefore, Plaintiff cannot now allege that his fair representation claim is based on Local 646's failure to negotiate the abolition of the Work Keys testing requirement.  Plaintiff's fair representation claim is limited solely to the allegation that Local 646 failed to process his grievance, and for purposes of this Order, this Court will analyze both of the grievances that Plaintiff attempted to file in determining whether Local 646 is entitled to summary judgment.

First, in December 2004 Plaintiff wanted Local 646 to file a grievance because his line of progression had been eliminated, he had been placed in a Mechanic's Assistant position, and his pay was red-circled. (Martin Decl. ¶ 18). Local 646 declined to file the grievance on his behalf. Plaintiff knew no later than December 2004 that Local 646 would not file the grievance on his behalf. On April 5, 2007, Local 646 was made a party to this action, which is more than six months after Plaintiff knew of the acts constituting the alleged violation. Thus, to the extent that Plaintiff's fair representation claim is based on Local 646's failure to process the December 2004 grievance, Local 646 is entitled to summary judgment because Plaintiff's claim is barred by the six-month statute of limitations applicable to fair representation claims.

Second, in October 2006 Plaintiff attempted to file a grievance because he was assigned work that he believed should not have been assigned to him. (Williams Dep. at pp. 81-82). It is well-established that a union does not breach its duty of fair representation by failing to process a grievance if it determines that the grievance is without merit. McCollum v. Bolger, 794 F.2d 602, 612 (11th Cir. 1986). Local 646 contends that this grievance was without merit because Plaintiff's work assignments did not violate the CBA. In his response, Plaintiff does not argue that his grievance had merit, much less point to evidence establishing the grievance was meritorious. As a result, Plaintiff has failed to raise a genuine issue of material fact as to whether his October 2006 was meritorious. Because a union does not breach

its duty of fair representation by failing to process a nonmeritorious grievance, Local 646 is entitled to summary judgment on Plaintiff's fair representation claim to the extent the claim is premised on Local 646's failure to process the October 2006 grievance.

It is worth noting that in his response brief Plaintiff seems to allege discrimination claims against Local 646.  Unsurprisingly, it is unclear from Plaintiff's Amended Complaint whether Plaintiff has asserted employment discrimination claims against Local 646.  In his Amended Complaint, Plaintiff alleges that "Defendants refusal" to place him in the General Mechanic line of progression violated Title VII, § 1981, the ADA, and the ADEA.  Plaintiff's original Complaint, which did not include Local 646 as a party, also uses the phrase "Defendants refusal."  When PCA was the only party to the action, it was clear that Plaintiff was referring to PCA's actions and that Plaintiff simply forgot to put an apostrophe between the "t" and the "s" of "Defendants."  Now that there are two Defendants, however, it is not clear to whom Plaintiff is referring when he speaks of "Defendants" actions because Plaintiff failed to properly employ the use of an apostrophe to specify whether "Defendants" is being used in the singular possessive or plural possessive.  Based on the demands made in the Amended Complaint's Prayer for Relief, it appears that Plaintiff did not intend to assert employment discrimination claims against Local 646.  Local 646 is mentioned twice in the Prayer for Relief, and each time Plaintiff demands judgment against Local 646 for breaching its duty of fair

representation. Plaintiff does not demand judgment against Local 646 on his employment discrimination claims. In contrast, Plaintiff does specifically demand judgment against PCA on his discrimination claims. This Court could conclude that Plaintiff has not asserted employment discrimination claims against Local 646 based on Plaintiff's failure to properly plead those claims. Nevertheless, to the extent that Plaintiff has asserted the same discrimination claims against Local 646 as he asserted against PCA, Local 646 is entitled to summary judgment on those claims for the reasons stated above in this Court's discussion of PCA's Motion for Summary Judgment.

### D. Plaintiff's Motion for Summary Judgment

Having granted both Defendants' Motions for Summary Judgment, Plaintiff's Motion for Summary Judgment is denied.

### III. CONCLUSION

For the foregoing reasons, Local 646's Motion for Summary Judgment and PCA's Motion for Summary Judgment are granted, and Plaintiff's Motion for Summary Judgment is denied.

**SO ORDERED**, this the 22nd day of May, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

dhc