**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| **MATTHEW WILLIAMS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **7:06-CV-111(HL)** |
| **PACKAGING CORPORATION OF** | : | |
| **AMERICA; and UNITED STEEL,** | : | |
| **PAPER AND FORESTRY, RUBBER** | : | |
| **MANUFACTURING, ENERGY,** | : | |
| **ALLIED INDUSTRIAL AND SERVICE** | : | |
| **WORKERS INTERNATIONAL UNION,** | : | |
| **USW (LOCAL 646),** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

# ORDER

Before the Court is Defendant Packaging Corporation of America's ("PCA")

Motion for Attorney's Fees (Doc. 64).  For the following reasons, PCA's Motion is

granted.

## I.      BACKGROUND

Defendant PCA filed its Motion for Attorney's Fees after the Court granted its

Motion for Summary Judgment (Doc. 34) in an Order (Doc. 62) entered on May 22,

2008.  The facts as recited in the May 22nd Order are as follows.

Defendant PCA owns and operates a pulp and paper mill in Valdosta, Georgia.

The mill, which opened in 1954, has been owned by PCA since 1999.  The United

Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union ("USW") is the collective bargaining representative of the maintenance and operation employees at the facility.  Defendant Local 646 consists of those members of the bargaining unit who choose to join USW.  A collective bargaining agreement ("CBA") governs the terms and conditions of employment of bargaining unit employees at the mill.

In 1970 Plaintiff Matthew Williams started working at PCA's Valdosta mill as an Extra Hand in the Woodyard.  (PCA's SOMF ¶ 13.)  Plaintiff filled a variety of jobs over the next several years.  In April 1977 Plaintiff transferred to the Brick-mason/Carpenter job classification in the Maintenance Department.  (Id. at ¶ 15.)  On July 1, 1986, Plaintiff was promoted to Brick-mason/Carpenter Leader.  (Id. at ¶ 16.)

When Plaintiff started working as a Brick-mason/Carpenter, the Maintenance Department consisted only of single-skill Brick-mason/Carpenters and multi-skill General Mechanics.  (Id. at ¶ 11.)  Prior to 1968 the Maintenance Department consisted of numerous single-skill job classifications, such as, for example, Machinists, Welders, Brick-mason/Carpenters, and Pipefitters.  (Id. at ¶ 10.)  But in 1968 the mill's owner at the time, Owens-Illinois, merged most of the single-skill job classifications into a new multi-skill General Mechanic job classification to provide greater flexibility.  (Id.; Local 646's SOMF ¶ 13.)  In 1997 PCA's predecessor, Tenneco, attempted to complete the merger of all single-skill job classifications into the multi-skill General Mechanic job classification when it unilaterally abolished the Brick-mason/Carpenter

2

line of progression.   (PCA's SOMF ¶¶ 11, 19.)   Employees in the Brick-mason/Carpenter line of progression moved into other jobs.  (Local 646's SOMF ¶ 10.) Plaintiff used his seniority to bump into an Oiler position, which paid significantly less than his job as a Brick-mason/Carpenter.  (Id.)

Because Tenneco abolished the line during the term of a CBA, USW's predecessor filed a grievance.  (Id.)  Also, in November 1998 Plaintiff filed suit in this Court against Tenneco for race discrimination under Title VII and § 1981 and retaliation under § 1981.  (PCA's SOMF ¶ 21.)   This Court granted summary judgment to Tenneco, and the Eleventh Circuit affirmed.  (Id. at ¶ 24.) Before Plaintiff's lawsuit was resolved, Tenneco agreed to resolve the Union's grievance by reinstating the Brick-mason/Carpenter line of progression, and Plaintiff returned to his previous position. (Id. at ¶ 25.)  Plaintiff was the only employee who chose to return to the line of progression when it was reinstated.  (Local 646's SOMF ¶ 10.)

In 2002 PCA and Local 646 began to negotiate the terms of a new CBA as the CBA in effect at the time was set to expire in 2003.  (Id. at ¶ 11.)   As part of the negotiations, PCA proposed eliminating the Brick-mason/Carpenter line of progression and the Electrical & Instrumental ("E&I") Day Operator job classification.  (Id. at ¶ 11.)

On December 13, 2004, the new CBA was ratified.  (PCA's SOMF ¶ 32). Among other things, the new CBA eliminated the Brick-mason/Carpenter line of progression and the E&I Day Operator job classification.  (Id. at ¶ 33.)   Robert

Simmons, a white employee, was the only E&I Day Operator.  (Id. at ¶ 38.)  To protect
Plaintiff and Simmons from a wage decrease that could result from transfers to lower-
paying positions, their wages were "red-circled," or frozen.  (Id. at ¶¶ 35, 36.)

On January 2, 2005, the new CBA was implemented, and on January 4, 2005,
Plaintiff was informed his job had been eliminated and he was being assigned to work
as a Maintenance Assistant. (Id. at ¶¶ 46, 47.)  Because his wages were red-circled,
Plaintiff still earned the same rate of pay as he did as a Brick-Mason/Carpenter, which
was $24.00 an hour.  (Id. at ¶ 43.)  But as a Maintenance Assistant, Plaintiff was not
eligible for any annual wage increases.  Plaintiff was informed that he could remain a
Maintenance Assistant indefinitely, or he could take the Work Keys and welding tests
to become qualified for a Class-D Mechanic position, which is the entry level General
Mechanic job.  (Id. at ¶¶ 48, 49.)

PCA, working in conjunction with Valdosta Technical College, formulated the
Work Keys Test in 2000 to ensure that applicants for General Mechanic positions
possess the necessary skills to do the job.  (Id. at ¶¶ 26-28.)  Plaintiff had previously
taken the Work Keys Test in 2000, but he failed two of the four skills areas tested.  (Id.
at ¶ 54.)  General Mechanics are required to pass three of the four skill areas.  (Id. at
¶ 55.)  Although Plaintiff only needed to retake the two skill area tests that he did not
pass, Plaintiff refused to do so and demanded that he be assigned as an A-class
General Mechanic without any testing requirement.  (Id. at ¶ 56.)  PCA refused to
waive the testing requirement, and Plaintiff remained as a Maintenance Assistant.

4

On November 2, 2006, Plaintiff filed suit against PCA in this Court, alleging that PCA's refusal to place him in a line of progression that allowed for promotions and pay increases constituted unlawful race discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Doc. 1.)  In addition, Plaintiff asserted a negligence claim against PCA based on Plaintiff's alleged exposure to asbestos fibers during his employment at the mill.

On April 5, 2007, Plaintiff filed an Amended Complaint (Doc. 16) that added USW Local 646 as a Defendant.  The Amended Complaint alleged that USW Local 646 breached its duty of fair representation when it did not process a grievance on Plaintiff's behalf.  The claims against PCA remained the same.

After Plaintiff filed his original Complaint, PCA filed a Motion to Dismiss (Doc. 3) all of Plaintiff's claims, except for his § 1981 claims.  As to his Title VII, ADEA, and ADA claims, PCA sought dismissal on the ground that Plaintiff failed to file a timely charge of discrimination with the EEOC.  PCA contended that the ratification of the new CBA occurred in December 2004 and that Plaintiff was transferred to a new position in January 2005.  Plaintiff, however, did not file a charge of discrimination with the EEOC until April 2006, which was more than 180 days after the adverse employment actions.  As to his negligence claim, PCA sought dismissal on the ground that the

5

Court did not have federal subject matter jurisdiction over that claim.[1]

On May 18, 2007, the Court entered an Order granting in part and denying in part PCA's Motion to Dismiss.  The Court dismissed the negligence claim for lack of subject matter jurisdiction, but the Court denied the Motion to Dismiss Plaintiff's Title VII, ADA, and ADEA claims.  Despite PCA's evidence to the contrary, the Court, as required at the motion to dismiss stage, accepted as true the allegations in Plaintiff's Complaint.  Based on the dates alleged, his EEOC charge was timely.

On October 22, 2007, Local 646 and PCA each filed Motions for Summary Judgment (Docs. 31 & 34), and shortly thereafter Plaintiff filed his own Motion for Summary Judgment (Doc. 36).  Plaintiff responded (Doc. 60) to Local 646's Motion, but he did not respond to PCA's Motion.[2]

On May 22, 2008, the Court granted (Doc. 62) Defendants' Motions and denied Plaintiff's.  As to Plaintiff's Title VII, ADA, and ADEA claims, the Court granted summary judgment to PCA on the ground that Plaintiff failed to file a timely charge with the EEOC.  The undisputed evidence demonstrated that the allegations in Plaintiff's Complaint were untrue; the CBA was in fact ratified in December 2004 and Plaintiff was transferred to his new position in January 2005.  The Court granted summary judgment

---

[1] On April 5, 2007, Plaintiff filed an Amended Complaint (Doc. 16) adding the United Steelworkers Union Local 646 as a party.  The Union has not joined in PCA's Motion for Attorney's Fees.

[2] On December 7, 2007, Plaintiff filed a document entitled "Plaintiff's Response in Opposition to Defendant Packaging Corporation of America [sic] Motion for Summary Judgment."  This document, however, is not a true response; it simply contains several sentences and recites, without citation to law or the record, that there are genuine issues of material fact.

to PCA on Plaintiff's § 1981 claim for disparate treatment on the ground that Plaintiff failed to establish a prima facie case because he was not qualified for the job in question, and he failed to establish that any similarly situated employees outside his protected class were treated more favorably.  As to his § 1981 claim for retaliation, the Court granted summary judgment to PCA because Plaintiff failed to point to anything in the record that established a causal connection between his protected activity and the alleged adverse employment actions.

On June 6, 2008, PCA filed a Motion for Attorney's Fees (Doc. 64).  In its Motion, PCA contends that it is entitled to attorney's fees because all of Plaintiff's claims were frivolous.  PCA also asserts that Plaintiff's claims were brought in bad faith.  PCA attached to its Motion a detailed breakdown of the amount of time each of its attorneys spent working on each aspect of the case.  Multiplying the amount of hours spent working on the case by each attorney's hourly rate, PCA contends that it is entitled to $82,999.50.  Plaintiff apparently attempted to file a Response (Doc. 71), but was unsuccessful in doing so.  The document Plaintiff has styled as a "Response" states simply that "Plaintiff relies on the brief with citation to authorities filed contemporaneously herewith and all documents of record."  (Pla.'s Resp. PCA's Mot. Atty's Fees at 1.)  Plaintiff, however, did not file a brief.

## II.   DISCUSSION

"Under the 'American Rule,' the default assumption is that each party is responsible for its own legal fees, and thus fees ordinarily will not be awarded to a

prevailing party without express statutory authority." <u>Johnson v. Florida</u>, 348 F.3d 1334, 1350 (11th Cir. 2003).  This traditional rule has been modified by Congress in numerous statutes.  In 42 U.S.C. § 1988(b), Congress provided that courts have discretion to award reasonable attorney's fees to prevailing parties in suits brought to enforce, among other things, § 1981.  Likewise, Title VII,[3] the ADA,[4] and the ADEA[5] have fee-shifting provisions that allow district courts to award reasonable attorney's fees to prevailing parties.  There is no fee-shifting provision for negligence claims like the one Plaintiff filed in this case.

### A.    ADA and Title VII Claim

The standard for awarding fees to a prevailing defendant is the same under § 1981, Title VII, and the ADA.  Under those statutes, a district court has discretion to award attorney's fees to a prevailing defendant if the court finds that the plaintiff's case was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  <u>Christianburg Garment Co. v. Equal Employment Opportunity Commission</u>, 434 U.S. 412, 422 (1978).  In this Circuit, courts consider three factors in determining whether a claim is frivolous: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the

---

[3]Title VII's fee-shifting provision is 42 U.S.C. § 2000e-5(k).
[4]The ADA's fee-shifting provision is 42 U.S.C. § 12205.
[5]The ADEA incorporates the attorney's fee provision of the Fair Labor Standards Act ("FLSA").
<u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1437 (11th Cir. 1998); <u>see</u> 29 U.S.C. § 626(b); 29 U.S.C. § 216(b).

merits." Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182, 1189 (11th Cir. 1985).

In this case, the Court has little difficulty concluding that Plaintiff's Title VII and ADA claims were frivolous.  As noted above, these claims were dismissed at the summary judgment stage because Plaintiff did not file a charge of discrimination within 180 days "after the alleged unlawful employment practice occurred."  See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001); Maynard v. Pneumatic Products Corp., 256 F.3d 1259, 1262 (11th Cir. 2001); Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003).  PCA raised the timeliness issue early in the case on its Motion to Dismiss; however, Plaintiff relied on the dates alleged in his Complaint to avoid dismissal.  In his Complaint, he alleged that the adverse employment actions–the ratification of the new CBA and the elimination of his position–occurred in December 2005 and January 2006, respectively, thus making his April 2006 charge of discrimination timely.  These dates were clearly wrong, and Plaintiff knew that they were wrong because PCA attached as exhibits to its Motion to Dismiss the CBA that abolished his position and Plaintiff's EEOC charge.  The CBA was dated January 5, 2005, and Plaintiff admitted in his EEOC charge that his position was eliminated in January 2005.  Nevertheless, the Court was required to accept as true the dates alleged in Plaintiff's Complaint, and based on those dates, Plaintiff's EEOC charge was timely and the Court denied PCA's Motion to Dismiss.

9

Despite the clear evidence provided by PCA's exhibits, Plaintiff continued to litigate his claims after it became clear that they were untimely.  Plaintiff has never pointed the Court to a single piece of evidence that was used as the basis for the dates alleged in the Complaint, nor has he ever provided a justification for his untimely charge.  Plaintiff alleged the wrong dates, and when it was brought to his attention, he did not withdraw his claims.  Instead, he continued to litigate them and even filed his own Motion for Summary Judgment.

Because Plaintiff's Title VII and ADA claims were clearly barred as a result of Plaintiff's untimely EEOC charge, the Court finds that these claims were frivolous.  In addition, the Court finds that Plaintiff acted in bad faith by continuing to litigate these claims after it was brought to his attention that they were untimely.  Accordingly, the Court finds that PCA is entitled to the attorney's fees it incurred in defending against Plaintiff's Title VII and ADA claims.

**B.    ADEA Claim**

The ADEA's standard for awarding attorney's fees to prevailing defendants is higher than the standard in Title VII and ADA cases.  A prevailing ADEA defendant is only entitled to attorney's fees if the district court finds that the plaintiff litigated in bad faith. Turlington, 135 F.3d at 1437.

Here, this Court dismissed Plaintiff's ADEA claim for the same reason it dismissed his Title VII and ADA claims: Plaintiff's EEOC charge was untimely.  As stated above, Plaintiff litigated in bad faith by continuing to pursue his Title VII and ADA

10

claims after it was brought to his attention that the dates alleged in his Complaint were incorrect.  Likewise, Plaintiff acted in bad faith by continuing to litigate his ADEA claim after PCA raised the timeliness issue.  Plaintiff clearly knew the correct dates of the adverse employment actions, yet he did not move to correct the dates in his Complaint and withdraw his claims.  As a result, the Court finds that Plaintiff litigated his ADEA claim in bad faith.

### C.  Section 1981 Claims

Plaintiff asserted two claims under § 1981: disparate treatment and retaliation. Because there is no exhaustion of administrative remedies requirement for § 1981 claims, see Caldwell v. Nat'l Brewing Co., 443 F.2d 1044, 1046 (5th Cir. 1971),[6] this Court did not dismiss these claims for failure to file a timely EEOC charge.  Instead, the Court reached the merits of Plaintiff's § 1981 claims and  granted summary judgment to PCA because Plaintiff failed to establish a prima facie case.

### 1.  Disparate Treatment

 Plaintiff alleged that PCA discriminated against him on the basis of race in violation of § 1981 when it refused to place him in a line of progression that would allow for promotion and pay increases.  Specifically, Plaintiff contended that he should have been placed in an A-Class Mechanic position, which is in the General Mechanic line of progression.

------

[6]In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit held that all decisions handed down by the old Fifth circuit before September 30, 1981, are binding precedent in the Eleventh Circuit.

In granting summary judgment to PCA, this Court concluded that Plaintiff failed to establish two elements of his prima facie: (1) that he was qualified for the position in question; and (2) that similarly situated employees outside his protected class were treated more favorably.  See Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (reciting elements of employment discrimination plaintiff's prima facie case).  First, Plaintiff failed to establish that he was qualified to be a General Mechanic because he failed the Work Keys Test, a requirement for a position in that line of progression.  Second, he failed to establish that David Simmons, a white employee whom Plaintiff attempted to use as a comparator, was similarly situated.  For these reasons, the Court granted summary judgment to PCA.

Upon review of the facts of this case, it is abundantly clear to this Court that Plaintiff's disparate treatment claim was frivolous.  Applying the Sullivan factors, Plaintiff failed to establish a prima facie case, and his case was dismissed before trial. These two factors alone do not lead this Court to conclude that an award of attorney's fees is appropriate; rather, such an award is appropriate because of Plaintiff's utter failure to produce a shred of evidence in support of this claim.

In particular, Plaintiff's failure to establish the qualifications prong of the prima facie case justifies a finding of frivolity.  Plaintiff was unqualified because he failed the Work Keys Test.  He knew that the test was a requirement for the position he desired, and he knew that he failed it.  Nevertheless, Plaintiff did not respond to PCA's Motion for Summary Judgment, nor did he respond to PCA's Statement of Material Facts in

an attempt to explain his lack of qualifications.  Instead, he filed his own Motion for Summary Judgment that was largely unsupported by citations to the record and did not include a Statement of Material Facts.  Plaintiff did respond to Local 646's Motion for Summary Judgment; however, that brief only addressed Plaintiff's breach of fair representation claim against the union.  It did not address any of his claims against PCA.

In his own Motion for Summary Judgment and his Response to Local 646's Motion, Plaintiff devoted only several paragraphs of conclusory statements about the Work Keys Test, contending for the first time that the Work Keys Test had a disparate impact on African-Americans.  Not only was this claim procedurally barred because Plaintiff failed to assert it in his Complaint, but he failed to point to any statistical evidence that showed the test had a disparate impact on African-Americans.  Because Plaintiff failed to rebut PCA's evidence that the Work Keys Test was a nondiscriminatory requirement for the job, Plaintiff could not show that he was qualified.


Although Plaintiff's failure to meet the qualifications element of the prima facie case would by itself be sufficient to warrant a finding of frivolity, Plaintiff also failed to establish that other similarly situated employees outside his protected class were treated more favorably.  His failure to make this showing, coupled with his complete failure to establish that he was qualified, leads this Court to conclude that this claim

was so frivolous, unreasonable, and without foundation as to warrant an award of attorney's fees to PCA.

### 2.  Retaliation

Plaintiff contended that PCA's actions were in retaliation for an employment discrimination suit he filed against PCA's predecessor in 1998.  The Court granted summary judgment on this claim because Plaintiff failed to establish a causal connection.  Simply put, there was not a single piece of evidence of a causal connection.  As noted above, Plaintiff did not respond to PCA's Motion for Summary Judgment.  In his own Motion, Plaintiff asserted, in several conclusory sentences, that he was entitled to summary judgment on his retaliation claim.  But he did not point to any evidence in the record in an attempt to establish the elements of his claim, including the causal connection element.  Because of the substantial delay between the present adverse employment actions and the 1998 suit, and Plaintiff's failure to point to anything in the record tending to show causation, the Court granted summary judgment to PCA.

As with Plaintiff's disparate treatment claim, Plaintiff's failure to produce a single piece of evidence in support of his retaliation claim leads this Court to conclude this claim was frivolous.  Thus, the Court finds that an award of attorney's fees is appropriate.

### D.    Amount of Award

14

The calculation of a reasonable attorney's fee award is performed by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888 (1984).  "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).  The applicant also has the burden to produce "satisfactory evidence that the requested rate is in line with prevailing market rates." Id. at 1299.  "Satisfactory evidence" is more than the affidavit of the attorney performing the work.  Id.  "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." ACLU of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (internal quotation marks omitted).  Thus, "[i]f a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims."  Id. at 437.

Here, PCA was represented by several attorneys from the Atlanta law firm of King & Spalding.  In an Affidavit attached to its Motion for Attorney's Fees, William Clineburg, counsel for PCA, avers that the hourly rates charged in this case are comparable to the prevailing rates in Atlanta.  This case, however, was filed in Valdosta, Georgia, and PCA certainly could have found competent local counsel to handle this case.  Moreover, an affidavit by itself is insufficient evidence of prevailing market rates.  As a result, the Court will reserve ruling on the amount of attorney's fees

15

to be awarded until PCA has presented to the Court adequate evidence of the prevailing market rates in Valdosta.  PCA shall have twenty (20) days from the entry of this Order to comply with this request.

Finally, the Court notes that a factor in determining the amount of an attorney's fee award is the plaintiff's ability to pay.  Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 917 (11th Cir. 1982).  Because he did not respond to PCA's Motion for Attorney's Fees, the Court is without any evidence of Plaintiff's financial resources.  Accordingly, within twenty (20) days of the entry of this Order, Plaintiff shall submit under oath to this Court the attached Financial Affidavit.  The Affidavit shall be notarized and shall bear the seal of the notary public.

## III.    CONCLUSION

For the foregoing reasons, PCA's Motion for Attorney's Fees is granted.  The Court reserves ruling on the amount of the fee award.  PCA shall submit within twenty (20) days of the entry this Order adequate evidence of the prevailing market rates in Valdosta.  Within twenty (20) days of the entry of this Order Plaintiff shall submit under oath the attached Financial Affidavit.  The Affidavit shall be notarized and shall bear the seal of the notary public.


**SO ORDERED**, this the 20th day of March, 2009.


*s/   Hugh Lawson*
**HUGH LAWSON, Judge**

dhc