UNITED STATES DISTRICT COURT
MIDDLE DISRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **MATTHEW WILLIAMS,** | |
| Plaintiff, | |
| v. | Civil Action No. 7:06-cv-111 (HL) |
| **PACKAGING CORPORATION OF AMERICA, et al.,** | |
| Defendants. | |

# ORDER

This case is before the Court on Defendant Packaging Corporation of America's ("PCA") motion for attorneys' fees (Doc. 74). In this order, the Court sets forth the amount of PCA's attorneys' fees award, explains what sanctions are to be imposed against Plaintiff's former attorney, Lecora Bowen ("Bowen"), and allocates the burden of paying the attorneys' fees award between Plaintiff and Bowen.

## I.   PROCEDURAL BACKGROUND AND BOWEN'S CONDUCT

On November 2, 2006, Plaintiff Matthew Williams ("Williams") filed suit against PCA in this Court, alleging violations of: (1) 42 U.S.C. § 1981; (2) Title VII of the Civil Rights Act of 1964; (3) the Age Discrimination in Employment Act ("ADEA"); and (4) the Americans with Disabilities Act ("ADA"). He also asserted a negligence claim against PCA.[1] Williams then filed an amended complaint (Doc. 16) that

---

[1] On May 18, 2007, the Court dismissed Plaintiff's state law negligence claim for lack of federal subject matter jurisdiction. (Doc. 21).

added USW Local 646 as a defendant. The amended complaint contained a fair representation claim against USW Local 646. The claims in the amended complaint against PCA remained the same.

Williams' complaint contained the wrong date for the adverse employment action. Williams alleged that his position was eliminated in December 2005. In reality, his position was eliminated in December 2004. Williams' error was significant because he did not file an EEOC charge until April 2006. Based on the actual date of the adverse employment action, December 2004, his EEOC charge was untimely, and thus his Title VII, ADEA, and ADA claims were subject to dismissal on this basis. Williams avers that during his initial meeting with Bowen, he provided Bowen a copy of the EEOC Charge. (Williams Aff. ¶ 4).

PCA filed a motion to dismiss on the basis that Williams did not timely file an EEOC charge. PCA attached to its motion the EEOC charge, but accepting as true the complaint's allegation that Williams' position was eliminated in December 2005, the Court determined that the EEOC charge was timely.

PCA and USW Local 646 then filed motions for summary judgment as to all claims in Williams' complaint. Williams filed a cross motion for summary judgment against PCA and USW Local 646. Bowen filed responses to the motions for summary judgment, which consisted of nothing more than several conclusory sentences that stated genuine issues of material fact existed. On December 9, 2007, Bowen filed a motion to amend (Doc. 56) her "Responses." Bowen stated that a "recurrence of the flu has plagued counsel for over three weeks." She thus

requested additional time to respond.  The Court granted her request and extended the deadline to December 21, 2007.  Bowen did not respond by that date.

On January 16, 2008, she filed a twenty page response (Doc. 60) to USW Local 646's motion for summary judgment, but she did not respond to PCA's motion for summary judgment.  The Court granted PCA's and USW Local 646's motions for summary judgment because Williams' Title VII, ADA, and ADEA claims were time barred and Williams failed to produce any evidence to support his § 1981 claim.

PCA filed a motion for attorneys' fees.  On June 30, 2008, Bowen requested additional time to respond to the motion.  On that same date, she requested that PCA be required to file additional evidence supporting the amount of fees it requested.  On July 3, 2008, the Court entered an order (Doc. 70) that denied Bowen's request.  The Court concluded that PCA's supporting evidence was sufficient to support its fee request.  The Court gave Bowen until July 11, 2008, to respond to PCA's motion for attorney's fees.

Bowen did not respond by the July 11, 2008 deadline.  On July 17, 2008, she filed a document styled a "Response to Motion for Attorney Fees" that consisted of the following two sentences: "Matthew Williams ("Plaintiff") files Response to Motion for Attorney Fees of Packaging Corporation of America ("Defendant").  In support of Plaintiff's response, Plaintiff relies on the brief with citations to authorities filed contemporaneously herewith and all documents of record."  No "brief with citation to authorities" was ever filed.

3

On March 20, 2009, the Court granted PCA's motion for attorneys' fees (Doc. 74) because it found that Williams' claims were frivolous and litigated in bad faith. The Court reserved ruling on the amount of the fees award because PCA did not present adequate evidence of the prevailing attorney market rates in Valdosta, Georgia and the Court was without evidence of Williams' financial resources. The Court instructed Williams' to submit under oath the financial affidavit that was attached to the order granting PCA's motion for attorneys' fees. The Court gave Williams twenty days from the entry of the order to file the affidavit. Bowen never filed the affidavit on behalf of her client.

A show cause order was subsequently issued (Doc. 79), ordering Bowen to appear and show cause why she should not be held in contempt of court and sanctioned for, among other things, failing to respond to motions, including the attorneys' fees motion.[2] After the show cause hearing, the Court entered another order (Doc. 86) deciding to impose sanctions against Bowen and reserving ruling on the type of sanctions and the amount of fees to be awarded to PCA until Williams had the opportunity to consult with new counsel.

Williams acquired new counsel. On August 28, 2009, the Court entered an order allowing Williams one final opportunity to respond to PCA's motion for attorneys' fees. Williams filed his response and PCA filed its reply. Having read

---

[2] At the show cause hearing, Bowen stated that her failures in this case were caused by computer difficulties she believed were caused by the Department of Homeland Security ("DHS"). She believed that DHS has entered her computer system and tampered with her files. Also during the show cause hearing, Bowen indicated to the Court that she may voluntarily resign from the practice of law. Bowen was ordered to file a report that stated whether she was surrendering her law license. Bowen filed the report. (Doc. 89). In the report, she declined to relinquish her license to practice law.

4

the briefs of the parties and reviewed Williams' financial affidavit the Court has determined the amount of PCA's fees award and the type of sanctions it will impose against Bowen. It has also determined how liability for payment of the fees award shall be allocated between Williams and Bowen.

## II. DISCUSSION

### a. Amount of Fees Award

To calculate reasonable attorney's fees, the court must multiply the "number of hours reasonably expended on the litigation" and the "reasonably hourly rate" for the attorneys' services. Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983). The product of these two numbers is the base figure, or "lodestar."[3] Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 563, 106 S. Ct. 3088, 92 L.Ed.2d 439 (1986).

The party seeking the fees "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." A.C.L.U. of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). Moreover, "[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent

---

[3] The determination of a reasonable hourly rate and number of compensable hours is aided by twelve factors, which include: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the necessary skill of the attorney; (4) the preclusion of other employment by the attorney due to the case; (5); the customary fee; (6) whether the attorney charges a fee on a fixed or contingent basis; (7) the time limitations imposed by the client or other circumstances; (8) the financial amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in like cases. Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 n. 2 (11th Cir.2008). Plaintiff's ability to pay is a factor. Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 917 (11th Cir. 1982).

judgment either with or without the aid of witnesses as to value." <u>Norman v. Hous. Auth. of Montgomery</u>, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted).

PCA initially sought $82,999.50 in attorneys' fees.  PCA was represented by the Atlanta law firm King & Spalding, L.L.P.  Included in its attorneys' fees motion were the billing rates for the King & Spalding attorneys and support staff that worked on the case. It also submitted an itemized statement of the hours worked by the attorneys and support staff.  PCA later submitted opinion affidavits of attorneys in Valdosta, who averred the billing rates in comparable cases by attorneys in the Valdosta area.

### i. Number of Hours Reasonably Spent

PCA has filed an itemized statement that documents the number of hours its attorneys and support staff spent on the case. In total, PCA's attorneys and support staff spent 300.5 hours of work in the case:[4] 37.3 hours for Attorney William Clineburg; 44.8 hours for Attorney Amanda Kunz; 198.1 hours for Attorney Lynette McNeil; and 12.0 hours for paralegal Lenora Shealy.[5]  Williams argues that PCA's documented hours are unreasonable.  The Court disagrees.  The case spanned over eighteen months, involved depositions, many research topics, and multiple motions and briefs.  Although Williams contends otherwise, there is nothing in the

---

[4] PCA has presented no evidence of the Valdosta market rates for document clerks.  The Court has therefore excluded from the calculation of the fees award the work performed by Adams, a document clerk at King & Spalding.

[5] Work by paralegals is recoverable as part of an attorney's fees award only to the extent that the paralegal performs work traditionally done by an attorney.  <u>Jean v. Nelson</u>, 863 F.2d 759, 778 (11th Cir. 1988).   The descriptions for the work performed by Shealy show the Court that Shealy performed work traditionally performed by attorneys, like researching and reviewing citations.

itemized statement that presents any indication that the total time spent on this case was not reasonable.

### ii. Reasonable Hourly Rates

Reasonable hourly rates are to be measured by the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Id. at 895 & n. 11.

Opinion evidence may be used to show reasonable rates, which is commonly done by submitting affidavits of other attorneys in the relevant legal community. Duckworth v. Whisenant, 97 F.3d 1393, 1396-97 (11th Cir.1996). The court may also utilize its own personal experiences and expertise to assess the lawyering skills exhibited during the pendency of the case. Id. at 1397.

Because this case was filed in Valdosta, Georgia, the Court will determine a reasonable hourly rate based on the prevailing market rates in Valdosta. As evidence of the prevailing Valdosta market rates, PCA submitted opinion affidavits of Attorney Wade Coleman, who has forty-five years experience in practicing law in Valdosta as well as in other locations in the Middle District of Georgia and Attorney James Elliot, who is partner in a Valdosta law firm and practices employment law. The affidavits set forth opinions on the hourly rates actually billed and paid by attorneys in comparable cases in Valdosta.

Williams objects to the affidavits and asserts that they are per se insufficient to

meet the applicant's burden of proving the reasonableness of its fees. The Court disagrees. The law is clear that "[e]vidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." Norman, 836 F.2d at 1299. While an affidavit from the attorney performing the work is insufficient to establish a reasonable hourly rate, affidavits from attorneys who did not perform the work are sufficient. Id. ("Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. [The affidavit] necessarily must speak to rates actually billed and paid in similar lawsuits.").

After taking all of the evidence before it, including Coleman's and Elliot's affidavits, and utilizing its own knowledge and experience, the Court finds that the following are the reasonable hourly rates for the PCA attorneys and support staff:

*Clineburg*:   PCA's lead counsel is a partner in the law firm of King & Spalding. He has over thirty-five years of experience and has served as lead counsel in numerous employment discrimination lawsuits. The Court finds that a rate of $280 per hour is comparable to similarly situated attorneys in Valdosta.

*Kunz*:  Kunz was an associate at King & Spalding and was assigned to this case. At the time this case commenced, she had 1.5 years of experience and at the time of final judgment, had close to 3 years of experience. She has serve d as counsel in an employment discrimination lawsuit. The Court finds that a rate of $195 per hour is comparable to similarly situated attorneys in the Valdosta area.

*McNeil*: An associate at King & Spalding during this case, McNeil had recently graduated law school at the time the case commenced. At the time of the case's conclusion, she had a little over 1.5 years experience. She has served as counsel in employment lawsuits. The Court finds that a rate of $150 per hour is comparable to similarly situated attorneys in the Valdosta area.

*Shealy*: Shealy is a paralegal at King & Spalding and has worked there for over twenty years. A rate of $85 per hour is comparable to similarly situated paralegals in the Valdosta area.

### b. Type of Sanctions Imposed Against Bowen

The Court has already determined in its previous order (Doc. 86) that it will sanction Bowen for her conduct in this case. Williams argues that an appropriate sanction is to require Bowen to pay for the entire amount of attorneys' fees awarded to PCA. PCA argues that Bowen and Williams should be held jointly and severally liable for payment of the attorneys' fees award.

There are multiple sources available to district courts to impose sanctions against an attorney, the client, or both. Three main sources are 28 U.S.C. § 1927, Rule 11 of the Federal Rules of Civil Procedure, and the Court's inherent authority. The Court chooses to sanction Bowen pursuant to § 1927. The statute provides in relevant part that

> [a]ny attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceeding in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  An attorney multiplies proceedings "unreasonably and vexatiously . . . only when the attorney's conduct is so egregious that it is tantamount to bad faith."  Amlong & Amlong, P.A. v. Denny's Inc., 500 F.3d 1230, 1239 (11th Cir. 2007) (citations and quotations omitted).  Bad faith exists when the attorney knowingly or recklessly pursues a frivolous claim or needlessly obstructs the litigation of a non-frivolous claim.  Id. at 1242.  The Eleventh Circuit has also stated that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest."  Collins v. Walden, 834 F.2d 961, 965 (11th Cir. 1987).

An argument may be made that Bowen's conduct from the start was unreasonable and vexatious because there is some evidence that Williams presented Bowen a copy of the EEOC charge before Bowen drafted and filed the complaint.  If Bowen received a copy of the EEOC charge before filing the complaint, then she decided to file a baseless lawsuit and needlessly continued to litigate the suit while PCA was forced to continue to defend.

Troubling to the Court is that the only evidence showing that Bowen received a copy of the EEOC charge before she filed the complaint is an affidavit from Williams, who has an incentive to place blame on Bowen in order to avoid being held responsible for paying PCA its attorneys' fees.

The Court finds it fair to apportion attorneys' fees to Bowen the amount of money spent by PCA after PCA filed its motion to dismiss on February 8, 2007.  A copy of the EEOC charge is attached to the motion to dismiss as an exhibit.  Upon

service of the motion to dismiss, it should have been clear to any attorney that Williams' ADA, ADEA, and Title VII claims were time barred. At that point Bowen had a duty to abandon those claims and to thoroughly investigate the merits of Williams' remaining claims. It should have been clear to Bowen that Williams' remaining claims lacked an evidentiary foundation. Because Bowen failed to carry out her professional duties, she forced PCA to incur needless expenses.

The amount of money PCA spent defending the case after it filed its motion for dismissal was directly related to Bowen's needless and vexatious decision to continue to litigate this case. Bowen is therefore liable to PCA for the all expenses PCA incurred after it filed its motion to dismiss.

### c. Williams' Liability for Remainder of Fees Award

The fees provisions that allow district courts to award reasonable attorneys' fees to prevailing parties in § 1981,[6] Title VII, and ADA cases contemplate that the losing party will pay the fees, not the party's attorney. Roadway Exp., Inc. v. Piper, 447 U.S. 752, 761, 100 S. Ct. 2455, 65 L.Ed.2d. 488 (1980) ("Neither § 1988 nor [Title VII] makes any mention of attorney liability for costs and fees"); Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 915 (11th Cir. 1982) ("[Title VII] contemplates assessments of attorney's fees against losing parties, not against counsel."); Mortle v. United Parcel Serv., 247 Fed. Appx. 820, 822 (7th Cir. 2007) (unpublished) (explaining that the ADA incorporates Title VII fees provision). These statutes have been interpreted to require the litigant to pay the attorneys' fees award because

---

[6] Attorneys' fees awards in § 1981 cases are governed by 42 USC § 1988(b).

allowing the litigant to escape liability for attorneys' fees would dilute Congress' intent to protect employers from burdensome litigation having no legal or factual basis. Durrett, 678 F.2d at 916. There is no case law in the Eleventh Circuit establishing whether the ADEA fees provision requires that the party bear the cost of paying the fees award.

In its March 20, 2009 order, the Court determined that Williams' § 1981, Title VII, ADA, and ADEA were frivolous and litigated in bad faith. Consequently, the Court decided to award PCA its reasonable attorneys' fees.

Having ordered that Bowen pay as a sanction PCA's attorneys' fees accrued after PCA filed its motion to dismiss, Plaintiff is ordered to pay PCA's attorneys' fees incurred before PCA filed its motion to dismiss. To be clear, the fees provision statutes of § 1981, Title VII, and the ADA are the bases for imposing upon Williams the burden of bearing a portion of the costs of the attorneys' fees.

In making this determination, the Court has taken into consideration Williams' ability to pay. Given his income of $2,000 a month, the Court feels that Williams is capable of paying his assigned portion of the attorneys' fees award.[7]

As a final note, Rule 11 sanctions and sanctions pursuant to the Court's inherent power are improper in this case because there is insufficient evidence presented to the Court that shows Williams knew or should have known his claims were frivolous or that he continued to litigate his claims for an impermissible

---

[7] The Court notes that an income of $2000 per month is a marginal amount to subsist. However, without charging Williams' wife with the burden of paying Williams' portion of the fees award, in making its determination that Williams must pay a portion of the fees award, the Court cannot ignore the fact that Williams' wife makes $3,477 per month.

12

purpose.  Rule 11 sanctions against a party are proper if the party "knew or should have known that the allegations in the complaint were frivolous."  Byrne v. Nezhat, 261 F.3d 1075, 1117 (11th Cir. 2001).  Sanctions against a party pursuant to the Court's inherent powers are proper if the litigant acted in bad faith, meaning that the party knew that a baseless claim had been brought on his behalf or that he was pursuing the defendants for a harassing or other impermissible purpose.  Id. at 1121, 1124.

PCA argues that Williams' third EEOC charge shows that Williams has litigated this case in bad faith.  The third EEOC charge filed on April 8, 2009, and attached as an exhibit to PCA's reply brief in support of its motion for attorneys' fees, asserts that PCA discriminated against Williams by terminating his employment at PCA.  The discrimination claim alleged by Williams in this case is that PCA refused to place him in a line of progression that allowed for promotions and pay increases.  While he presented no evidence to support his line of progression discrimination claims, the Court is unwilling to find that his third charge of discrimination constitutes sufficient evidence showing that he knew or should have known that the line of progression claims were frivolous.  The third charge of discrimination, standing alone, is also insufficient evidence to show that that Williams continued to litigate this case for a harassing purpose.

### d. Calculations

PCA spent a total of 300.5 hours defending the case.

**Portion of Attorneys' Fees Award that Williams Must Pay   $5396.5**

- Total Hours Before Motion to Dismiss Filed on February 8, 2007
    - 35.5 hours
- *McNeil*
    - 27.3 hours @ $150/hour                                $4095
- *Shealy*
    - 5.1 hours @ $85/hour                                  $433.5
- *Clineburg*
    - 3.1 hours @ $280/hour                                 $868

**Portion of Attorneys' Fees Award that Bowen Must Pay   $45224.0**

- Total Hours After Motion to Dismiss Was Filed
    - 265 hours
- *McNeil*
    - 170.8 @ $150/hour                                     $25620
- *Kunz*
    - 44.8 hours @ $195/hour                                $8736
- *Clineburg*
    - 34.2 hours @ $280/hour                                $9576
- *Shealy*
    - 15.2 hours @ $85/hour                                 $1292

14

**III.    CONCLUSION**

For the explained reasons, the Court enters sanctions against Bowen. She is required to pay, $45224.0, the amount of attorneys' fees incurred after PCA filed its motion to dismiss. Williams is required to pay $5396.5, the remainder of the fees award.

**SO ORDERED**, this the 7th day of April, 2010.

<u>*s/ Hugh Lawson*</u>

**HUGH LAWSON, SENIOR JUDGE**

lmc